**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **WILL MCCONNELL,** | : | **Civil No. 4:11-CV-972** |
| | : | |
| **Plaintiff,** | : | |
| | : | **(Judge Jones)** |
| **v.** | : | |
| | : | **(Magistrate Judge Carlson)** |
| **CANADIAN PACIFIC REALTY CO.,** | : | |
| | : | |
| **Defendants.** | : | |

## MEMORANDUM OPINION AND ORDER

### I.    Statement of Facts and of the Case

This case comes before the Court for resolution of a discovery dispute regarding the proper scope of a physical inspection under Rule 34 of the Federal Rules of Civil Procedure of the defendant's property, a property which house 15 commercial tenants who are not yet parties to this litigation.   With respect to this dispute the pertinent facts can be simply stated:

The plaintiff, William McConnell, is a disabled person, a mobility-challenged individual who is confined to a wheelchair.   The defendant, Canadian Pacific Realty Company, operates Hills Plaza, a retail mall property in State College, Pennsylvania, which houses approximately 15 retail outlets as tenants.   On May 20, 2011, McConnell filed a complaint in federal court pursuant to Title III of the Americans

with Disabilities Act (ADA, 42 U.S.C. §12181 et seq., against the defendant alleging that the defendant's Hill Plaza property violates the accessibility standards prescribed by the ADA. (Doc. 1)   In particular, McConnell's complaint alleges that this property's areas of  non-compliance with the ADA include, but are not limited to, failures to meet parking access requirements, and a lack of proper entrance access and common paths of travel for mobility challenged persons. (Id., ¶ 10.)  On the basis of these allegations, McConnell seeks declaratory and injunctive relief under the ADA, along with an award of attorney's fees. (Id.)

The parties are now engaged in pre-trial discovery.  As part of this pre-trial discovery the parties now present the Court with what they describe as a time-sensitive discovery dispute, albeit a dispute that has been pending between the parties for the past month.  This dispute relates to a demand for inspection of the defendant's property which was served on the defendant by the plaintiff on or about October 7, 2011. (Doc. 24-1)  This demand for inspection, provided in pertinent part that:

> Plaintiff, by and through his undersigned counsel, pursuant to Rule 34 of the Federal Rules of Civil Procedure, hereby requests entry upon the Defendant's property . . . , for the purpose of inspecting and measuring, surveying, photographing, testing or sampling the property within the scope of Rule 26(b). The area of inspection shall be the following:
>
> 1. Any and all Parking Area(s) provided for use by the public, customers and invitees;

2. Any and all Restrooms, which are provided for use by the public, customers, and invitees;

3. Any and all entrances and Path(s) of Travel areas provided for public use;

4. All access(es) to goods and services throughout the facility; and

5. Any and all areas of the public accommodation, excepting only work areas used exclusively by employees; and

6. All other areas cited in the Complaint as being in violation of the ADA.

(Id.)

This Rule 34 inspection demand contained no topical or temporal limitations on the plaintiff's inspection of these facilities. Therefore, the demand, in theory, called for an inspection of a wholly unspecified duration for any and all potential ADA violations, including potential violations that are completely unrelated to the physical challenges experienced by the plaintiff. The parties now report that this inspection is scheduled to take place on November 15, 2011, at 1:00 p.m.

Presented with this demand from the plaintiff, on November 7, 2011, the defendant filed a motion, and brief, seeking a protective order under Rule 26 of the Federal Rules of Civil Procedure. (Docs. 23 and 24)  In this motion, the defendant cited numerous alleged shortcomings in this Rule 34 demand, including its lack of temporal and topical limitations, as well as the demand's request to inspect all

accommodations in this facility, a demand which necessarily would entail an inspection of the 15 retail outlets open to the general public which are housed within this facility.  With respect to this latter objection, the defendant asserted that any physical inspection should be limited to the barriers to access specifically cited by McConnell in his complaint, parking access limitations and common entrance area impediments.  According to the defendant, since McConnell has not specifically alleged further ADA non-compliance within the retail outlets at Hills Plaza, he lacked standing to challenge other, unidentified access barriers and should not be permitted to inspect those outlets to determine whether such barriers exist. (Id.)

On November 8, 2011, this time-sensitive motion was referred to this Court for resolution. (Doc. 25)  The following day, November 9, 2011, the plaintiff filed a response to this motion for protective order at our request. (Doc. 26)  This response acknowledged the lack of temporal and topical limitations set forth in the demand for inspection, while suggesting that any inspection should be limited topically to inspections of ADA compliance with accessibility standards for mobility challenged persons like the plaintiff.  In addition, the plaintiff advised the Court that any inspection of the entire facility, including the 15 retail outlets housed in the mall, could be completed in 2 hours or less, setting a proposed temporal limitation of this inspection.

Having acknowledged these concerns, the plaintiff, however, resisted the defendant's suggestion that the scope of the inspection should be strictly limited solely to the parking lot and common areas specifically cited in the plaintiff's complaint. According to McConnell, the allegations set forth in the complaint clearly establish the plaintiff's standing to bring this action.  Having established that he has standing to sue to enforce ADA mobility restriction access standards, McConnell argues that his examination of the subject property should not be limited to the threshold obstacles which defeat his access to the facility, but should entail a complete examination of the entire facility. (Id.)

On November 10, 2011, we conducted oral argument on this motion. Following that oral argument, we granted the parties the opportunity to submit supplemental briefs on this discovery issue.   The parties took advantage of this opportunity, tendering competing briefs to the Court on November 11, 2011. (Docs. 27 and 28)  Accordingly, this matter is now ripe for resolution.  For the reasons set forth below, the defendant's motion will be granted, in part, and denied, in part, as follows:

## II.    Discussion

### A.    Guiding Principles

Several basic guiding principles inform our resolution of the instant discovery

dispute.   At the outset, Rule 34 of the Federal Rules of Civil Procedure generally

governs procedures for inspection of property, and provides that:

> **(a) In General.** A party may serve on any other party a request within
> the scope of Rule 26(b):

> **(2)** to permit entry onto designated land or other property possessed or
> controlled by the responding party, so that the requesting party may
> inspect, measure, survey, photograph, test, or sample the property or any
> designated object or operation on it.
>
> **(b) Procedure.**
>
> **(1)** *Contents of the Request.* The request:
>
> **(A)** must describe with reasonable particularity each item or category of
> items to be inspected;
>
> **(B)** must specify a reasonable time, place, and manner for the inspection
> and for performing the related acts;

> F. R.Civ.Proc., Rule 34(a)(2) and (b).

By its terms, the touchstone for analysis of a Rule 34 inspection request is

reasonableness.  The inspection demand must describe the place to be examined with

reasonable particularity, and must specify a reasonable time, place and manner for the

examination.  Thus, it is well-settled that a request "must avoid 'boiler-plate language'

and set forth 'the items to be inspected . . . with reasonable particularity.'" <u>Johnson</u>

v. Mundy Indus. Contractors, Inc., No. 7:01CV99-BO3, 2002 WL 31464984, at *3

(E.D.N.C. Mar. 15, 2002).  In short, "all-encompassing demands" do not suffice to

satisfy this reasonableness standard.. In re Asbestos Prods. Liab. Litig. (No. VI), 256

F.R.D. 151, 157 (E.D. Pa. 2009); see also Walsh v. Krantz, No. 1:07-CV-0616, 2008

WL 5189138, at *4 (M.D. Pa. Dec. 10, 2008)

   The scope of what type of discovery may be compelled under Rule 34 is further

defined by Rule 26(b)(1) of the Federal Rules of Civil Procedure, which provides as

follows:

> (1) Scope in General.  Unless otherwise limited by court order, the scope
> of discovery is as follows: Parties may obtain discovery regarding any
> nonprivileged matter that is relevant to any party's claim or defense –
> including the existence, description, nature, custody, condition, and
> location of any documents or other tangible things and the identity and
> location of persons who know of any discoverable matter.  For good
> cause, the court may order discovery of any matter relevant to the subject
> matter involved in the action.  Relevant information need not be
> admissible at trial if the discovery appears reasonably calculated to lead
> to the discovery of admissible evidence.  All discovery is subject to the
> limitations imposed by Rule 26(b)(2)( C ).

Fed. R. Civ. P., Rule 26(b)(1)

    Rulings regarding the proper scope of discovery, and the extent to which

discovery may be compelled, are matters consigned to the court's discretion and

judgment.  Thus, it has long been held that decisions regarding motions to compel are

"committed to the sound discretion of the district court." DiGregorio v. First

Rediscount Corp., 506 F.2d 781, 788 (3d Cir. 1974).  Similarly, issues relating to the

scope of discovery permitted under Rule 26 also rest in the sound discretion of the

court.  Wisniewski v. Johns-Manville Corp., 812 F.2d 81, 90 (3d Cir. 1987).  Thus,

a court's decisions regarding the conduct of discovery, and whether to compel

disclosure of certain information, will be disturbed only upon a showing of an abuse

of discretion.  Marroquin-Manriquez v. I.N.S., 699 F.2d 129, 134 (3d Cir. 1983).  This

far-reaching discretion extends to rulings by United States Magistrate Judges on

discovery matters.  In this regard:

> District courts provide magistrate judges with particularly broad
> discretion in resolving discovery disputes. See Farmers & Merchs. Nat'l
> Bank v. San Clemente Fin. Group Sec., Inc., 174 F.R.D. 572, 585
> (D.N.J.1997). When a magistrate judge's decision involves a
> discretionary [discovery] matter . . . , "courts in this district have
> determined that the clearly erroneous standard implicitly becomes an
> abuse of discretion standard." Saldi v. Paul Revere Life Ins. Co., 224
> F.R.D. 169, 174 (E.D.Pa.2004) (citing Scott Paper Co. v. United States,
> 943 F.Supp. 501, 502 (E.D.Pa.1996)). Under that standard, a magistrate
> judge's discovery ruling "is entitled to great deference and is reversible
> only for abuse of discretion." Kresefky v. Panasonic Commc'ns and Sys.
> Co., 169 F.R.D. 54, 64 (D.N.J.1996); see also Hasbrouck v.
> BankAmerica Hous. Servs., 190 F.R.D. 42, 44-45 (N.D.N.Y.1999)
> (holding that discovery rulings are reviewed under abuse of discretion
> standard rather than de novo standard); EEOC v. Mr. Gold, Inc., 223
> F.R.D. 100, 102 (E.D.N.Y.2004) (holding that a magistrate judge's
> resolution of discovery disputes deserves substantial deference and
> should be reversed only if there is an abuse of discretion).

Halsey v. Pfeiffer, No. 09-1138,  2010 WL 3735702, *1 (D.N.J. Sept. 17, 2010).

This discretion is guided, however, by certain basic principles.  Thus, at the outset, it is clear that Rule 26's broad definition of that which can be obtained through discovery reaches only "nonprivileged matter that is relevant to any party's claim or defense."  Therefore, valid claims of relevance and privilege still cabin and restrict the court's discretion in ruling on discovery issues.  Furthermore, the scope of discovery permitted by Rule 26 embraces all "relevant information"  a concept which is defined in the following terms: "Relevant information need not be admissible at trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence."

A party seeking discovery bears the initial burden of proving the relevance of the requested information.  Morrison v. Philadelphia Housing Auth., 203 F.R.D. 195, 196 (E.D.Pa. 2001).  Once that initial burden is met, "the party resisting the discovery has the burden to establish the lack of relevance by demonstrating that the requested discovery (1) does not come within the broad scope of relevance as defined under Fed. R. Civ. P. 26(b)(1), or (2) is of such marginal relevance that the potential harm occasioned by discovery would outweigh the ordinary presumption in favor of broad disclosure."  In re Urethane Antitrust Litigation, 261 F.R.D. 570, 573 (D.Kan. 2009).

Furthermore, in the context of a motion for protective order, which seeks to curtail some discovery demand based upon a showing of good cause, we must consider the potentially harmful effect of the requested discovery upon the moving party.  In this regard, "[g]ood cause is established on a showing that disclosure will work a clearly defined and serious injury to the party seeking disclosure." Publicker Indus., Inc. v. Cohen, 733 F.2d 1059, 1071 (3d Cir. 1984) (citation omitted). "The injury shown, however, need be no more than 'embarrassment'; thus, a party need not establish a monetizable injury." Pearson v. Miller, 211 F.3d 57, 73 (3d Cir. 2000).

Finally, any assessment of a discovery dispute must considers the issues presented in the particular litigation.  Here, we are called upon to consider the proper scope of discovery in ADA litigation, where the plaintiff pursues claims brought under a statute designed as a broadly remedial measure correcting disability discrimination which provides that:  "No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. § 12182 (a).

With these legal guideposts in mind, we turn to consideration of this motion for protective order.

**B.**  **Resolution of This Motion for Protective Order**

**1.**  **The Plaintiff's Inspection of the Subject Facility Must Comply With Reasonable Topical and Temporal Limitations**

At the outset, we agree with the defendant that the plaintiff's current inspection demand, which sets not temporal or topical limitations upon a physical examination of this property, does not in its current form satisfy Rule 34's injunction that an inspection demand must describe the place to be examined with reasonable particularity, and must specify a reasonable time, place and manner for the examination.  In fact, the plaintiff's motion papers suggest that the plaintiff acknowledges these shortcoming, while suggesting some topical and temporal limits on this inspection. (Doc. 26)

In the exercise of our discretion, we will impose such topical and temporal limitations here.  First, we will restrict the examination topically to those ADA considerations which the plaintiff, a mobility challenged individual, has standing to pursue; that is, mobility barriers to access at this facility. See Doran v. 7-Eleven, Inc., 524 F.3d 1031-1041-44 (9th Cir. 2008)(permitting claims only as to ADA restrictions which relate to the plaintiff's disabilities).  Thus, the inspection of this facility may not assess ADA compliance in fields unrelated to mobility restrictions on access to the accommodations held open to the public.

In addition, we will impose temporal restrictions on this inspection. With respect to these temporal limitations, we first will define the duration of the inspection, something which is not reflected in the current inspection notice. In this regard we note that the plaintiff has insisted that the total duration of the inspection is anticipated to entail less than two hours. Accordingly, accepting this representation as accurate and finding this overall duration to be a reasonable allotment of time to examine the parking areas, the public entrances, and the 15 retail establishments, we will limit the duration of this inspection to two and one-half hours. [1]

We will impose a second temporal restriction on these inspections. We are mindful of the potential disruptions any inspection may have on the various retail vendors in this mall. These disruptions may result both from the inspection itself and from any subsequent remedial measures which the defendant might have to implement based upon any inspections. Recognizing this disruption and the potential hardship which this inspection could cause for non-parties like these commercial tenants, we conclude that, to the extent that interior inspections of the publicly accessible areas

---

[1] We further note that this two and one-half hour duration limit largely addresses the defendant's concern that the inspection will become unduly intrusive. Given that there are 17 sites which would be subject to inspection–15 retail outlets, the entrance areas, and the parking lot– the average duration of the inspection of any particular location would be less than 10 minutes, a short span of time which would not typically permit unduly intrusive inspections.

inside these retail establishments are authorized by the court, those inspections should occur after regular business hours, unless the specific vendor-tenants agree to an inspection during business hours.

In imposing this additional temporal restriction we understand, and appreciate, the plaintiff's concern that after-hours inspections impose some additional burdens on the plaintiff.  In particular, we recognize that some daylight inspections may be necessary to fully document and photographically depict conditions at the mall during the winter months.  Recognizing this legitimate concern, we will permit exterior parking lot and common pathway inspections to occur during business hours, while restricting interior shop inspections to either some time before, or after, regular business hours.  By fashioning this limitation we minimize disruption of business activities, permit daylight examination and photography of exterior spaces, but confine interior inspections to early morning or evening, when interior lighting can be used to permit the plaintiff to accurately photograph these interior settings.

> ## 2.   Subject to Notice and an Opportunity for Tenants to Lodge Objections, Interior Inspections of the Publicly-Accessible Spaces in the 15 Tenant Stores Will Be Permitted

The principal remaining area of dispute between the parties involves the related questions of the proper scope of the plaintiff's standing and the appropriate breadth of this inspection.  On the substance of this issue, the positions of the parties draw a

stark contrast.  While both parties agree the ADA does not "require a person with a disability to engage in a futile gesture" of subjecting himself to discrimination "if such person has actual notice that a person or organization covered by this subchapter does not intend to comply with its provisions," 42 U.S.C. § 12188(a)(1), the parties have contrasting views regarding how this actual notice standing requirement affects the scope of discovery.  From the defendant's perspective, this actual notice standard limits the plaintiff solely to asserting claims, and seeking discovery on claims, which are actually known to the plaintiff.  Therefore, the defendant argues that McConnell may not assert claims, or seek discovery, relating to disability barriers that are not presently known to him, and opposes any inspection of the interior of the retail outlets at this mall on these grounds.  See, e.g., Gregory v. Melorse Group, LLC, No. Civ. A. 03-2414, 2003 WL 22928805, at *3-4 (E.D. La. Dec. 8, 2003); Access Now, Inc. v. South Florida Stadium Corp., 161 F. Supp. 2d 1357 (S.D. Fla. 2001); Brown v. Grand Island Mall Holdings, Ltd., No. 4:09-CV-3086 (D. Neb. Feb. 24, 2010).

In contrast, McConnell argues that a narrow standing rule, and discovery standard, which limits liability and discovery inspections solely to previously known barriers to access, defeats the remedial purposes of the ADA and places disabled persons in the unreasonable position of having to overcome unlawful access barriers in a serial, seriatim fashion.  Thus, McConnell points to those cases which reject this

14

narrow standing rule to argue that, having identified particular barriers to access at a facility, he is entitled to litigate, and seek discovery regarding, all barriers presented at this facility. Doran v. 7-Eleven, Inc., 524 F.3d 1031-1041-44 (9th Cir. 2008); Steger v. Franco, Inc., 228 F.3d 889 (8th Cir.2000); Feezor v. Chico Lodging, LLC, 422 F.Supp. 2d 1179, 1182 (E.D. Cal. 2006) (as long as plaintiff encountered one barrier, he has right to bring suit for all other barriers which hinder his access, even if he only became aware of them by expert's subsequent visit); Access 4 All, Inc. v. Absecon Hospitality Corp., No. 1:04-cv-6060, 2006 WL 3109966 (D.N.J. 2006).  Applying this broader view of standing, McConnell insists that his expert should be permitted to survey all barriers, and the plaintiff should be entitled to litigate all barriers to access, even if they are not listed in the complaint, or were not initially encountered by the plaintiff prior to the filing of lawsuit. See Frame v. City of Arlington, 657 F.3d 215, 235-36 (5th Cir. 2011) (holding that plaintiff had standing to sue over barriers not initially encountered, even including sidewalks that had not yet been built, if he could show a high likelihood that he would be denied the benefits once the feature was built), Martinez v. Home Depot USA, Inc., 299 F. App'x 728, 729 (9th Cir. 2008); White v. Divine Investments, Inc., 286 F. App'x 344, 346 (9th Cir. 2007) (standing includes barriers found in expert's inspection during discovery) Martinez v. Longs Drug Stores Corp., 281 F. App'x 712, 713 (9th Cir. 2008) (standing includes barriers

found in expert's inspection during discovery); <u>Doran v. 7-Eleven, Inc</u>., 506 F.3d

1191, 1198-99 (9th Cir. 2007) (plaintiff entitled to expert survey of all barriers at

premises and first identification of barriers may be through discovery); <u>Bodley v.</u>

<u>Macayo Restaurants, LLC</u>, 546 F. Supp.2d 696, 700-01 (D. Ariz. 2006) (plaintiff's

claim may include barriers first found by expert during discovery).

Recognizing that courts have reached contrasting views regarding the

appropriate scope of discovery in this particular field, we regard the question of

defining reasonable physical inspection discovery limits in this setting as a matter

which rests in the broad discretion of the Court.  Exercising that broad discretion, we

decline to adopt the narrow standing-discovery standard espoused by the defendant,

which would limiting standing and discovery solely to barriers that are previously

known by the plaintiff.  Instead, we will permit reasonable inspection, subject to the

topical and temporal limitations which we have previously established, for all mobility

barriers at this site.

We reach this conclusion for at least three reasons.

First, we believe that adopting this broader scope of discovery is more

consistent with the animating principles that generally govern discovery in federal

court, principles which recognize that civil discovery is not narrowly cabined solely

to a search for admissible evidence directly relating to known, and specific,

16

allegations set forth in the plaintiff's complaint.  Rather, Rule 26 permits discovery of all "relevant information," a concept which is defined in the following terms: "Relevant information need not be admissible at trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1).

Second, we find that considerations of judicial economy favor an approach to discovery in ADA litigation which permits an inspection of all related ADA compliance issues at one time.  Otherwise, we literally invite plaintiffs in these cases to run a physical and metaphysical gauntlet when litigating disability claims.  A narrowly focused discovery rule, like that proposed by the defendant, would compel disabled plaintiffs to confront and overcome a series of physical and legal barriers in a serial fashion, rather than identifying and addressing all ADA access barriers at this facility at one time.

Finally, we conclude that the narrowly tailored discovery standard proposed by the defendants–which requires disabled persons to first, overcome threshold barriers to access; second, discover further access barriers; and third, assert ADA claims as to those newly discovered barriers– before permitting discovery relating to these additional access barriers would undermine the broadly remedial goals of the statute. That statute provides that: "No individual shall be discriminated against on the basis

of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. § 12182 (a). Indeed, this narrow approach to discovery in ADA disability cases yields a cruel irony. As one court has observed: "[I]t would be ironic if not perverse to charge that the natural consequence of this deterrence, the inability to personally discover additional facts about the defendant's violations, would defeat that plaintiff's standing to challenge other violations at the same location that subsequently come to light." Doran v. 7-Eleven, Inc., 524 F.3d 1034, 1042 (9th Cir. 2008).

While we conclude that the plaintiff's discovery inspection should not be limited solely to access barriers known to the plaintiff and disclosed in his complaint, this conclusion regarding the proper scope of an inspection does not end our inquiry. There is a second, important procedural aspect to this inquiry.

The scope of the inspection proposed by the plaintiff implicates not only the interests of the defendant as the owner of these properties. It may also directly affect the interests of the various tenants, who are not yet parties in this litigation. Liability under the ADA extends to "any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. § 12182 (a). This broad definition

includes both landlords and commercial tenants, and could embrace both the defendant in this case which owns the mall, and the 15 retail outlets housed at the facility owned by the defendant. <u>See generally</u> <u>First Bank National Ass'n. v. FDIC</u>, 79 F.3d 362 (3d Cir. 1996)(discussing implications of ADA liability for landlords and tenants). In fact, recognizing the shared interests of commercial landlords and tenants in this situation some courts have held that these tenants should be joined as indispensable parties under Rule 19 of the Federal Rules of Civil Procedure in any ADA litigation which seeks to broadly challenge barriers to access in a multi-outlet shopping mall. <u>See</u> <u>Frotton v. Barkan</u>, 219 F.R.D. 31 (D. Mass. 2003). Indeed, it appears that the plaintiff has already contemplated the joinder of these tenants as additional parties in this litigation. (Doc. 19, ¶ 10) Thus, in considering this inspection request we must take into account the fact that the tenants at this mall are viewed by the plaintiff as potential defendants in this matter, may well be indispensable parties in this lawsuit under Rule 19 of the Federal Rules of Civil Procedure, <u>Frotton v. Barkan</u>, 219 F.R.D. 31 (D. Mass. 2003), and are entities that the plaintiff actively seeks to inspect. Yet, these tenants have not been provided notice of this proposed inspection or an opportunity to be heard on this matter.

We believe that more is required here as a procedural matter before the plaintiff conducts an inspection of these 15 tenants' businesses, an inspection which may be

the prelude the joinder of these tenants in this litigation.  Therefore, we will require the plaintiff to provide 7 days' written notice to any tenant prior to inspecting that tenant's store.  This notice will provide the tenant, who potentially has a direct legal interest in the outcome of any inspection, an opportunity to be heard on this issue before any inspection is conducted.  Indeed, we believe that Rule 34 itself calls for such notice to non-parties before inspections are conducted of a party's property in a way which affects the legal interests of non-parties.  By its terms, Rule 34 only applies to inspections of a party's property. Fed. R. Civ. P. 34 (a). Rule 34 (c), in turn, speaks to inspection of property controlled by a non-party, and specifies that such inspections must comply with Rule 45 of the Federal Rules of Civil Procedure, which would require that the non-party whose property is subject to inspection receive advance notice of any proposed inspection.

We understand that the notice we are requiring for inspection of the tenants' properties will compel a modification of either the schedule or the scope of the inspection presently planned for November 15, 2011.  We note, however, that the timing of this order is a function of the parties' timing in presenting this dispute to us, a dispute which we have promptly addressed.  Moreover, given the fact that these tenants are potential defendants in this matter, and may well be indispensable parties in this lawsuit under Rule 19 of the Federal Rules of Civil Procedure, <u>Frotton v.</u>

<u>Barkan</u>, 219 F.R.D. 31 (D. Mass. 2003), we believe that any inspection order must provide these tenants with both notice and an opportunity to be heard on this matter.

## III.   <u>Conclusion</u>

Accordingly, for the foregoing reasons, the defendant's motion for protective order, (Doc. 23), will be granted, in part, and denied, in part, as follows:

1.   First, we restrict the examination topically to those ADA considerations which the plaintiff, a mobility challenged individual, has standing to pursue; that is, mobility barriers to access at this facility.

2.   Second, we limit the duration of this inspection to two and-one-half hours.

3.   Third,  to the extent that interior inspections of the publicly accessible areas inside these retail establishments are authorized by the Court, those inspections should occur after regular business hours, unless the specific vendor agrees to an inspection during business hours.

4.   Fourth, subject to 7 days' notice and an opportunity for tenants to lodge objections, interior inspections of the publicly-accessible spaces in the 15 tenant stores will be permitted.

So ordered this 14th day of November, 2011.


                                        ***S/Martin C. Carlson***
                                        Martin C. Carlson
                                        United States Magistrate Judge