**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **WILL MCCONNELL,** | : | **Civil No. 4:11-CV-972** |
| | : | |
| **Plaintiff** | : | |
| | : | **(Judge Brann)** |
| **v.** | : | |
| | : | **(Magistrate Judge Carlson)** |
| **CANADIAN PACIFIC REALTY CO.,** | : | |
| | : | |
| **Defendants** | : | |

## REPORT AND RECOMMENDATION

### I.     Introduction

At its best, litigation is a process of constructive conflict, where the collision and competition of ideas sheds light on a dispute, light which leads to reason and achieves justice.   At its worst, this constructive conflict can become a fruitless friction, which generates much heat and smoke, but little light.   Prior to the reassignment of this case to Judge Brann, the presiding judge in this matter, Judge Jones, had admonished the parties to keep in mind the constructive aspects of the conflict that is litigation, urging the parties to shed light on the important issues in this lawsuit and to refrain from generating heat and smoke.

We reflect upon these prior observations by the district court as we consider the competing motions for summary judgment in this case, (Docs. 85 and 87.), and

a related motion to strike. (Doc. 103.) Indeed, we find these observations to be particularly apt since we conclude that, despite the diligent efforts of counsel, disputed factual questions preclude summary judgment on behalf of any party in this case. Instead, we recommend that this matter be resolved, as many disputes must be resolved, through the presentation of proof, a step which can shed light on matters which may still be shrouded in factual dispute.

## II. <u>Statement of Facts and of the Case</u>

The plaintiff, William McConnell, is a disabled person, a mobility-challenged individual who is confined to a wheelchair. The defendant, Canadian Pacific Realty Company, operates Hills Plaza, a retail mall property in State College, Pennsylvania, which houses approximately 15 retail outlets as tenants. On May 20, 2011, McConnell filed a complaint in federal court pursuant to Title III of the Americans with Disabilities Act (ADA), 42 U.S.C. §12181 et seq., against the defendant alleging that the defendant's Hill Plaza property violates the accessibility standards prescribed by the ADA. (Doc. 1.) On the basis of these allegations, McConnell seeks declaratory and injunctive relief under the ADA, along with an award of attorney's fees. (<u>Id</u>.)

Following the filing of this complaint, the parties engaged in protracted, and often contentious, pre-trial discovery. (Docs. 23-29, 42-51, 53-63.) One aspect of

this contentious discovery entailed inspections of the defendant's property by an expert retained by the plaintiff. When the plaintiff's expert issued an initial report following these inspections citing some 45 alleged ADA violations, (Doc. 89-3.), the defendant took the initiative to endeavor to correct those barriers to access. Having completed these remedial steps, the parties then filed cross motions for summary judgment. (Docs. 85 and 87.) In its motion, Canadian Pacific argued, in part, that its remedial measures now rendered McConnell's complaint for injunctive relief moot. McConnell responded to this motion, in part, by belatedly tendering a supplemental expert report to the court, which identifies four uncorrected barriers to access relating to exterior, and common area handicapped access in certain locations at the mall, as well as one allegedly uncorrected condition in tenant space at the mall. (Doc. 103, Ex. A.) Thus, these motions, which have been fully briefed, and passionately argued, highlight a series of disputed factual matters in this litigation. The motions also have inspired yet another discovery dispute, with the defendant now seeking to strike the supplemental expert report filed by the plaintiff in this case. (Doc. 103.)

Our review of these hotly contested motions reveal that they draw starkly contrasting legal positions regarding matters which are often quite fact specific. Moreover, the parties take these contrasting legal positions against the backdrop of a factual record marked by disputes and disagreements. For example, the defendant

contends that McConnell's complaint is now moot given modifications made to this property, a contention which McConnell disputes in part by citing to an expert report which identifies allegedly unresolved barriers to access at the defendant's shopping mall. Similarly, the defendant asserts in this motion that McConnell currently lacks standing to contest these alleged barriers to access, in part because the barriers do not impede McConnell's physical access to this facility, a standing question which–as posed by the defendant–turns on factual issues relating to both the nature of McConnell's disability[1], the type of barriers to access that remain at the mall and the credibility of McConnell's statements of an intention to return to this property.

Furthermore, in their competing summary judgment motions, both parties insist that they are entitled to judgment as a matter of law on the question of whether the modifications proposed by the plaintiff are "readily achievable" under the ADA. The parties each seek judgment as a matter of law on this issue despite the fact that it is often said under the ADA that: "Whether a specific change is readily achievable 'is a fact intensive inquiry.' Access Now v. South Florida Stadium Corp., 161 F.Supp.2d 1357, 1371(S.D.Fla.2001)." Hubbard v. Rite Aid Corp., 433 F. Supp. 2d 1150, 1168

---

[1]For example, the defendant contends that McConnell lacks standing to complaint about the lack of handicapped hand rails at this facility because his disability is so severe that he does not use hand rails, a contention which McConnell disputes as a factual matter. (Doc. 102.)

(S.D. Cal. 2006).

Having considered these closely intertwined legal and factual disputes, we find that they are not amenable to judgment as a matter of law. Therefore, for the reasons set forth below, we recommend that these cross motions for summary judgment both be denied.

### III. Discussion

#### A. Summary Judgment Standard of Review

Rule 56 of the Federal Rules of Civil Procedure governs motions for summary judgment. Rule 56 provides that "[a] party may move for summary judgment, identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought." Fed. R. Civ. P. 56(a). The court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Id. "To be material, a fact must have the potential to alter the outcome of the case" under governing law. N.A.A.C.P v. North Hudson Regional Fire & Rescue, 665 F.3d 464, 475 (3d Cir. 2011). In order for an issue to be genuine, "all that is required is that sufficient evidence supporting the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." In re Lemington Home for Aged, 659 F.3d 282, 290 (3d Cir. 2011) (quoting Anderson v. Liberty Lobby, Inc.,

477 U.S. 242, 248–49 (1986)).

The movant bears the initial burden of "informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once this initial requirement is met, the burden then shifts to the non-moving party to demonstrate the existence of a genuine issue for trial. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 585–86 (1986); Williams v. Borough of West Chester, Pa., 891 F.2d 458, 460–61 (3d Cir. 1989). In determining whether a genuine issue of material fact exists, the court views the evidence in the light most favorable to the party opposing summary judgment and draws all reasonable interests in that party's favor. See Scott v. Harris, 550 U.S. 372, 378 (2007); Wishkin v. Potter, 476 F.3d 180, 184 (3d Cir. 2007). However, "facts must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts." Ricci v. DeStefano, 557 U.S. 557, 586 (2009) (quoting Scott, 550 U.S. at 380).

### B.    This Dispute is Not Wholly Moot

At the outset, the defendants seek summary judgment because they contend that modifications which they have made to their facility have corrected all ADA

compliance issues, and, therefore, have rendered the plaintiff's claims moot. As we have previously observed:

> The mootness doctrine recognizes a fundamental truth in litigation: "[i]f developments occur during the course of adjudication that eliminate a plaintiff's personal stake in the outcome of a suit or prevent a court from being able to grant the requested relief, the case must be dismissed as moot." Blanciak v. Allegheny Ludlum Corp., 77 F.3d 690, 698–99 (3d Cir.1996). There is a constitutional dimension to the mootness doctrine. Under Article III of the Constitution, a federal court may adjudicate "only actual, ongoing cases or controversies." Lewis v. Continental Bank Corp., 494 U.S. 472, 477, 110 S.Ct. 1249, 108 L.Ed.2d 400 (1990). "To invoke the jurisdiction of a federal court, a litigant must have suffered, or be threatened with, an actual injury traceable to the defendant and likely to be redressed by a favorable judicial decision." Id . (citing Allen v. Wright, 468 U.S. 737, 750–751, 104 S.Ct. 3315, 82 L.Ed.2d 556 (1984); Valley Forge Christian College v. Americans United for Separation of Church & State, Inc., 454 U.S. 464, 471–473, 102 S.Ct. 752, 70 L.Ed.2d 700 (1982)). Article III denies the District Court the power to decide questions that cannot affect the rights of litigants before it, and confines it to resolving live controversies "admitting of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts." Aetna Life Insurance Co. v. Haworth, 300 U.S. 227, 241, 57 S.Ct. 461, 81 L.Ed. 617 (1937). The case or controversy requirement continues through all stages of federal judicial proceedings, trial and appellate, and requires that parties have a personal stake in the outcome. Lewis, 494 U.S. at 477–478. "This means that, throughout the litigation, the plaintiff 'must have suffered, or be threatened with, an actual injury traceable to the defendant and likely to be redressed by a favorable judicial decision.' " Spencer, 523 U.S. at 7 (quoting Lewis, 494 U.S. at 477).

Breslin v. Dickinson Twp., 1:09-CV-1396, 2011 WL 1900462 (M.D. Pa. May 19, 2011).

Federal courts have, in fact, dismissed ADA accommodation claims as moot when the alleged violations have been wholly remedied after the initial filing of a suit seeking injunctive relief. Norkunas v. Tar Heel Capital Wendy's LLC, 5:09-CV-00116, 2011 WL 2940722 (W.D.N.C. July 19, 2011) citing Brother v. CPL Investments, Inc., 317 F. Supp. 2d 1358 (S.D.Fla.2004), Parr v. L & L Drive–Inn Restaurant, 96 F. Supp. 2d 1065 (D. Haw.2000), Baltimore Neighborhoods, Inc. v. LOB, Inc., 92 F. Supp. 2d 456 (D. Md.2000). Indeed, " [i]t is the law of the Third Circuit that when a defendant agrees to provide all the prospective injunctive relief sought by a plaintiff, his claim for that relief may be dismissed as moot. Johnson v. Horn, 150 F.3d 276, 287 (3d Cir.1998)." Med. Soc'y of New Jersey v. Herr, 191 F. Supp. 2d 574, 581 (D.N.J. 2002). However, where there is a factual dispute regarding whether full relief has been provided to an ADA claimant, an action may not be dismissed as moot. See Wesley v. Vaughn, CIV. A. 99-1228, 2001 WL 210285 (E.D. Pa. Feb. 28, 2001).

Moreover, a claim that a specific condition has been corrected, standing alone, does not automatically result in a finding that a dispute is now wholly moot since:

> "it is well established that the voluntary discontinuance of challenged activities by a defendant does not necessarily moot a lawsuit...." United States v. Jones, 136 F.3d 342, 348 (4th Cir.1998) (citing Iron Arrow Soc'y v. Heckler, 464 U.S. 67, 71–72 (1983)). "Defendants face a heavy burden to establish mootness in such cases because otherwise they would simply be free to return to [their] old ways after the threat of a

8

lawsuit had passed." Lyons P'Ship, L.P. v. Morris Costumes, Inc., 243 F.3d 789, 800 (4th Cir.2001) (quoting United States v.. W.T. Grant. Co., 345 U.S. 629, 632 (1953)). An exception to the general rule exists when there is "no reasonable expectation that the wrong will be repeated." Id. The Supreme Court has established a two-factor test to determine whether a defendant has met this burden. First, the defendant must show, "that there is no reasonable expectation that the alleged violation will recur." County of Los Angeles v. Davis, 440 U.S. 625, 631 (1979) Second, the defendant must show that, "interim relief or events have completely and irrevocably eradicated the effects of the alleged violations[s]." Id.

Norkunas v. Tar Heel Capital Wendy's LLC, 5:09-CV-00116, 2011 WL 2940722 (W.D.N.C. July 19, 2011).

Here, McConnell argues that this dispute is not moot because the plaintiff has submitted a declaration indicating that certain barriers to access remains at the defendant's facilities. McConnell further contends that some of the barriers previously cited by the plaintiff's consulting expert related to non-permanent features at the facility, such as bathroom fixtures, and that ensuring continued compliance with ADA standards relating to these non-permanent fixtures remains a live dispute between the parties. See, e.g., Clavo v. Zarrabian, SACV03864CJCRCX, 2004 WL 3709049 (C.D. Cal. May 17, 2004); Moeller v. Taco Bell Corp., C02-05849 MJJ, 2007 WL 2301778 (N.D. Cal. Aug. 8, 2007).

Canadian Pacific, in turn, disputes McConnell's characterization of this case as a live dispute, based in part upon what has been a recurring theme in this litigation, discovery disputes. Specifically, Canadian Pacific contends that McConnell cannot

9

save this case from a mootness challenge through the submission of a supplemental report by the plaintiff's consulting expert, a report which identifies approximately five allegedly uncorrected barriers to access, since that report was not timely disclosed to the defendants. Accordingly, Canadian Pacific seeks to strike this report, (Doc. 103.) and thereby eliminate any factual conflict on this particular score. Not surprisingly, McConnell disputes the defendant's characterizations of his discovery practices, and denies that delay in the production of this report warrants any sanction, much less the severe sanction of preclusion of evidence.

Upon consideration, we find that disputed factual issues regarding whether all barriers to access have been remedied and whether there has been full compliance with all ADA mandates bars summary judgment in this case on mootness grounds. As for the parties' dispute regarding discovery issues, and the timing of the release of McConnell's supplemental expert report, which identifies certain isolated, on-going areas of alleged non-compliance with ADA standards, without deciding whether there was any blameworthy conduct in this regard, we conclude that preclusion of this evidence is not warranted here.

In this regard, we note that the court's discretion regarding whether to preclude evidence as a sanction for alleged discovery abuses is guided by certain basic principles. Foremost among these principles is the tenet that sanctions should always

be narrowly tailored to meet the misconduct, and should entail no greater punishment than is reasonably necessary to address the specific wrongdoing that confronts the court. See Klein v. Stahl, GMBH & Co., Maschinefabrik, 185 F.3d 98 (3d Cir. 1999). This basic, but pivotal, aspect of the exercise of discretion in this area, has been voiced in many ways. Thus, it is well established that, "[b]ecause of their very potency, inherent powers must be exercised with restraint and discretion. A primary aspect of that discretion is the ability to fashion an appropriate sanction for conduct which abuses the judicial process." Chambers v. NASCO, Inc. 501 U.S. at 44-45 (citation omitted). Therefore, in exercising this authority we are cautioned that:

> [A] district court must ensure that there is an adequate factual predicate for flexing its substantial muscle under its inherent powers, and must also ensure that the sanction is tailored to address the harm identified. In exercising its discretion under its inherent powers, the court should be guided by the same considerations that guide it in the imposition of sanctions under the Federal Rules. First, the court must consider the conduct at issue and explain why the conduct warrants sanction.

Republic of Philippines v. Westinghouse Elec. Corp., 43 F.3d at 74.

Moreover:

> [H]aving evaluated the conduct at issue, the district court must specifically consider the range of permissible sanctions and explain why less severe alternatives to the sanction imposed are inadequate or inappropriate. Although the court need not "exhaust all other sanctioning mechanisms prior to resorting to its inherent power" (Landon v. Hunt, 938 F.2d at 450, 454 (3d Cir.1991)), the court must explain why it has chosen any particular sanction from the range of

alternatives it has identified.  See Poulis, 747 F.2d at 868 (sanctions under Fed.R.Civ.P. 16 and 37).

Id.

In this case, without deciding whether there has been any sanctionable conduct, we conclude that the guiding principle that sanctions should always be narrowly tailored to meet the misconduct, and should entail no greater punishment than is reasonably necessary to address the specific wrongdoing that confronts the court, see, Klein v. Stahl, GMBH & Co., Maschinefabrik, 185 F.3d 98 (3d Cir. 1999), compels a conclusion that striking this report, and potentially mooting an otherwise live dispute, would be to violate the principles of restraint which guide us in this field and would, therefore, constitute an excessive sanction.  Accordingly, we recommend that the defendant's motion to strike, (Doc. 103.), be denied.

Yet, while we conclude that this dispute is not wholly moot, it is evident that the plaintiff's supplemental report identifies a far narrower set of deficiencies than those originally identified by McConnell.  Indeed, at present, McConnell's complaints appear to be limited to four common area complaints involving ramps at the Weis Market, parking spaces near the Kish Bank, sidewalk inclines outside of the GNC store, and signage near the Ollie's outlet, as well as one tenant space concern regarding restroom facilities at the Weis Market.  (Doc. 103, Ex. A.)  In contrast, McConnell's original expert report identified approximately 45 barriers to access

which needed to be corrected, and cited more than 30 access issues relating to tenant spaces. (Doc. 89-3.) It is evident, therefore, that many issues, which were once live disputes in this case, have now been rendered largely moot by these remedial measures. As to these apparently corrected conditions, it is recommended that the Court instruct the parties to meet, confer, and identify those matters which remain live disputes, thereby narrowing the scope of any evidentiary hearing.

### C. Canadian Pacific Is Not Entitled to Summary Judgment Based Upon McConnell's Alleged Lack of Standing

The defendant has also moved for summary judgment on the grounds that the Court lacks subject-matter jurisdiction over this lawsuit because the plaintiff lacks standing to bring suit. The doctrine of standing is predicated on the requirement prescribed by Article III of the United States Constitution that restricts the jurisdiction of federal courts to "cases" and "controversies". In this regard, under Article III, Section 2 of the United States Constitution, federal courts have authority to adjudicate an action only if it constitutes a justiciable "case" or a "controversy" that has real consequences for the parties. Raines v. Byrd, 521 U.S. 811, 818 (1997); Eagle Environmental, L.P. v. Beckman, 237 F.3d 186, 192-93 (3d Cir. 2001).

Discussing the justiciability requirement of standing imposed by Article III, Section 2 of the Constitution, the United States Supreme Court has explained that:

The requirements of Art. III are not satisfied merely because a party

13

requests a court of the United States to declare its legal rights, and has couched that request for forms of relief historically associated with courts of law in terms that have a familiar ring to those trained in the legal process. The judicial power of the United States defined by Art. III is not an unconditioned authority to determine the constitutionality of legislative or executive acts. The power to declare the rights of individuals and to measure the authority of governments, this Court said 90 years ago, "is legitimate only in the last resort, and as a necessity in the determination of real, earnest and vital controversy." . . . As an incident to the elaboration of this bedrock requirement, this Court has always required that a litigant have "standing" to challenge the action sought to be adjudicated in the lawsuit.

Valley Force Christian College v. Americans United for the Separation of Church & State, Inc., 454 U.S. 464, 471 (1982) (quoting Chicago & Grand Trunk R. Co. v. Wellman, 143 U.S. 339, 345 (1892)). Acknowledging that the concept of constitutional standing had long been elusive of easy definition, the Court articulated that:

at an irreducible minimum, Art. III requires the party who invokes the court's authority to show that he personally has suffered some actual or threatened injury as a result of the putatively illegal conduct of the defendant, and that the injury fairly can be traced to the challenged action and is likely to be redressed by a favorable decision.

Id. at 472. In later decisions, the Supreme Court further clarified this standard by holding that in order to satisfy Article III's standing requirements, a plaintiff must show: (1) that it has suffered an injury in fact that is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendants; and (3) it is likely, as opposed

14

to merely speculative, that the inquiry will be redressed by a favorable decision.

Friends of the Earth, Inc. v. Laidlaw Environmental Servs. (TOC), Inc., 528 U.S. 167,

180-81 (2000) (citing Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992));

see also Whitmore v. Arkansas, 495 U.S. 149, 155 (1990) (alleged injury "must be

must be concrete in both a qualitative and temporal sense.  The complainant must

allege an injury to himself that is distinct and palpable, as opposed to merely

abstract.").[2]  In addition, where a plaintiff seeks injunctive relief, as is the case here,

he must demonstrate a "real and immediate threat of future injury by the defendant."

City of Los Angeles v. Lyons, 461 U.S. 95, 101-02 (1983).  A plaintiff that lacks

constitutional standing is precluded from bringing suit in federal court.  Valley Forge,

454 U.S. at 474.  The party invoking federal jurisdiction bears the burden of

---

[2]The Court in Valley Forge explained that the constitutional requirement that a litigant demonstrate actual injury redressable by the judiciary tends to assure that the legal questions presented to the court "will be resolved, not in the rarified atmosphere of a debating society, but in a concrete factual context conducive to a realistic appreciation of the consequences of judicial action."  454 U.S. at 472.

In addition to these constitutional considerations, the Supreme Court has noted that even when a plaintiff has articulated redressable injury, the Court has, due to prudential considerations, "refrained from adjudicating 'abstract questions of wide public significance' which amount to 'generalized grievances,' pervasively shared and most appropriately addressed in the representative branches.  Valley Forge, 454 U.S. at 475 (citations omitted) (emphasis added). This concept of prudential standing is not relevant to the standing issues presented in this case.

establishing the elements of standing, "with the manner and degree of evidence required at the successive stages of the litigation." Lujan, 504 U.S. at 561. In the context of injunctive relief actions brought under the ADA the court of appeals has described the elements of standing in the following terms:

> Three requirements must be met to establish constitutional standing. See Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992). First, the plaintiff must demonstrate an "injury-in-fact." See Danvers Motor Co. v. Ford Motor Co., 432 F.3d 286, 290-291 (3d Cir.2005) (citing Lujan, 504 U.S. at 560-61, 112 S.Ct. 2130). The injury must be concrete and particularized and actual or imminent, as opposed to conjectural or hypothetical. Id. Second, the plaintiff must demonstrate "a causal connection between the injury and the conduct complained of." Id. Last, the plaintiff must show that it is likely, not merely speculative, that his or her injury will be redressed by a favorable decision. Id.; see also Interfaith Cmty. Org. v. Honeywell Int'l, Inc., 399 F.3d 248, 254-55 (3d Cir.2005); Lloyd v. Hovensa, LLC, 369 F.3d 263, 272 (3d Cir.2004). In addition to meeting these three basic requirements for standing, Doe must also "meet[ ] the preconditions for asserting an injunctive claim in a federal forum." City of Los Angeles v. Lyons, 461 U.S. 95, 109, 103 S.Ct. 1660, 75 L.Ed.2d 675 (1983). To establish standing in an action for injunctive relief, a plaintiff must show that he or she is likely to suffer *future* injury from the defendant's illegal conduct. See Roe v. Operation Rescue, 919 F.2d 857, 864 (3d Cir.1990). Past illegal conduct is insufficient to warrant injunctive relief unless it is accompanied by "continuing, present adverse effects." Lyons, 461 U.S. at 102, 103 S.Ct. 1660 (citing O'Shea v. Littleton, 414 U.S. 488, 495-96, 94 S.Ct. 669, 38 L.Ed.2d 674 (1974)).

Doe v. Nat'l Bd. of Med. Examiners, 210 F. App'x 157, 159-60 (3d Cir. 2006).

Further, in cases where plaintiffs seek injunctive and declaratory relief, federal courts have found that there are two ways that a plaintiff can meet his burden of establishing "injury-in-fact". The first method of proof entails demonstrating that the plaintiff intends to return to the non-compliant public accommodation, and in doing so will face real and immediate threat that he will again be harmed by the non-compliant accommodation. Alternatively, a plaintiff may show injury-in-fact by establishing that the inaccessible conditions will deter him from again visiting the non-compliant public accommodation, despite his desire to do so.

The first method of showing injury-in-fact relies on the plaintiff demonstrating an intent to return to the offending accommodation, which will be found in the following circumstances: (1) the plaintiff has alleged that the defendant has engaged in past discriminatory conduct that is violative of the ADA; (2) it is reasonable to infer from allegations in the complaint that the discriminatory conduct will continue; and (3) it is reasonable to infer based on past patronage, proximity of the public accommodation to the plaintiff's home, business, or personal connections to the area that the plaintiff intends to return to the public accommodation in the future. See, e.g., Chapman v. Pier 1 Imports, 631 F.3d 939, 949 (9th Cir. 2011); Camarillo v. Carrols Corp., 518 F.3d 153, 158 (2d Cir. 2008); Pickern v. Holiday Quality Foods, Inc., 293 F.3d 1133, 1137-38 (9th Cir. 2002).

Regarding the second method of showing injury-in-fact, which focuses on whether the non-compliant public accommodation actually deters a disabled plaintiff from visiting or making use of the non-compliant accommodation, the method tracks the ADA itself, which provides that

> [n]othing in this section shall require a person with a disability to engage in a futile gesture if such person has actual notice that a person or organization covered by this subchapter does not intend to comply with its provisions.

42 U.S.C. § 12188(a)(2). In <u>Chapman</u>, the Ninth Circuit Court of Appeals summarized the two methods of establishing standing in Title III ADA cases as follows:

> [A]n ADA plaintiff can show a likelihood of future injury when he intends to return to a noncompliant accommodation and is therefore likely to reencounter a discriminatory architectural barrier. Alternatively, a plaintiff can demonstrate sufficient injury to pursue injunctive relief when discriminatory architectural barriers deter him from returning to a noncompliant accommodation. Just as a disabled individual who intends to return to a noncompliant facility suffers an imminent injury from the facility's '"existing or imminently threatened noncompliance with the ADA," a plaintiff who is deterred from patronizing a store suffers the ongoing "actual injury" of lack of access to the store. That is, an ADA plaintiff suffers an injury-in-fact either because discriminatory architectural barriers deter him from returning to a facility or because they "otherwise interfere with his access to" the facility. Thus, we have Article III jurisdiction to consider requests for injunctive relief both to halt the deterrent effect of noncompliant accommodation and to prevent imminent "discrimination," as defined by the ADA, against a disabled individual who plans to visit a noncompliant accommodation in the future.

Chapman, 631 F.3d at 950; see also Disabled Americans for Equal Access, Inc. v. Ferries Fel Caribe, Inc., 405 F.3d 60 (1st Cir. 2005); Pickern, 293 F.3d at 1138.

Many components of this standing analysis are fact-specific, and turn on and assessment of disputed evidence, including evidence relating to the subjective motivation of the plaintiff. Given the fact-specific nature of this analysis, where there are genuine disputes as to material facts summary judgment is not appropriate, and a ruling must be deferred pending an evidentiary hearing. See, e.g., Brown v. Showboat Atl. City Propco, LLC, CIV.A. 08-5145 NLH, 2010 WL 5237855 (D.N.J. Dec. 16, 2010)(denying summary judgment on standing issue); Access 4 All, Inc. v. Boardwalk Regency Corp., CIV.A. 08-3817 RMB, 2010 WL 4860565 (D.N.J. Nov. 23, 2010)(same). However, in conducting this analysis numerous courts have rejected the notion that test plaintiffs, or other serial litigants, automatically forfeit their own standing to sue for discrimination in Title III accessibility cases. See, e.g., Access For The Disabled, Inc. v. First Resort, Inc., 2012 WL 2917915, at *2-3 (M.D. Fla. July 17, 2012) (at summary judgment, holding the plaintiff had standing to sue, finding no evidence to dispute the plaintiff's assertions that she intended to return to the subject property, and finding that "whether [the plaintiff] is an ADA 'tester' does not preclude her standing in this case."); Harty v. Burlington Coat Factory of Pennsylvania, L.L.C., 2011 WL 2415169, at *8 (E.D. Pa. June 16, 2011) (finding that

for purposes of standing, the plaintiff's allegations regarding his business connections to the area and his plan to return were more significant than the fact that the plaintiff had filed more than 200 ADA lawsuits); Access 4 All, Inc. v. Absecon Hospitality Corp., 2006 WL 3109966, at *7 (D.N.J. Oct. 30, 2006) ("Indeed, because Plaintiff Esposito is a frequent litigant with the stated goal of ensuring ADA compliance, his claim of intent to return to the Hampton Inn to do additional examinations is made more, not less, credible.")

Here, the parties have tendered competing and conflicting materials relating to the issue of McConnell's current standing to sue. These materials highlight disputes between the parties regarding the extent to which McConnell's access to the defendant's facilities is still impeded, as well as factual disputes concerning whether McConnell continues to suffer a demonstrable injury in fact due to the defendant's actions. In this regard, the defendant argues, in part, that McConnell is a serial litigant whose assertions of injury-in-fact are not wholly credible. McConnell, in turn, has filed a declaration which describes in some detail his past history of travels to facilities in State College, Pennsylvania, including the defendant's property, as well as stating his intention to return to the defendant's property once these barriers to access are removed. With the standing issue framed in this fashion these material, and hotly disputed, factual issues define the issue of standing as a question of fact

which cannot be resolved without some further evidentiary explorations, and thus is not subject to summary judgment resolution. See, e.g., Brown v. Showboat Atl. City Propco, LLC, CIV.A. 08-5145 NLH, 2010 WL 5237855 (D.N.J. Dec. 16, 2010)(denying summary judgment on standing issue); Access 4 All, Inc. v. Boardwalk Regency Corp., CIV.A. 08-3817 RMB, 2010 WL 4860565 (D.N.J. Nov. 23, 2010)(same). Therefore, summary judgment would not be appropriate on this issue at this time.

**D.** **In this Case the Question of Whether the Specific Changes Sought by the Plaintiff Are Readily Achievable is a Fact Intensive Inquiry Which Cannot Be Resolved On Summary Judgment**

Beyond these threshold questions of mootness and standing, the parties have each filed for summary judgment on the merits of the ADA claims in this litigation, with each party arguing that it is entitled to a judgment as a matter of law regarding whether specific modifications proposed by the plaintiff are readily achievable. Title III of the ADA addresses discrimination by places of public accommodation, and provides in relevant part as follows: "No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. § 12182(a). In order to state a claim for discrimination

under Title III of the ADA, a plaintiff must allege that: (1) he was discriminated against on the basis of disability; (2) in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation; and (3) by any person who owns, leases (or leases to), or operates a place of public accommodation. Harty v. Burlington Coat Factory of Pennsylvania, L.L.C., Civ. A. No. 11-01923, 2011 WL 2415169, at *9 (E.D. Pa. 2011); Bowers v. Nat'l Collegiate Athletic Ass'n, 9 F. Supp. 2d 460, 480 (D.N.J. 1998); Sharrow v. Bailey, 910 F. Supp. 187, 191 (M.D. Pa. 1995); see also 42 U.S.C. § 21282(a).

Here these is no dispute that Canadian Pacific leases a place of public accommodation. Therefore, the issue which must be resolved is whether the action, or inaction, of the defendant amounts to "discrimination" as that term is defined by the ADA. In this regard, the ADA defines "discrimination" in the following terms:

> 42 U.S.C. § 12182(a). Subsection (b)(2)(A) of section 12182 describes actions and inactions that constitute discrimination under the statute and it states: (2) Specific Prohibitions (A) Discrimination For purposes of subsection (a) of this section, discrimination includes— . . . . (iv) a failure to remove architectural barriers, and communication barriers that are structural in nature, in existing facilities ... *where such removal is readily achievable* .

First Bank Nat. Ass'n v. F.D.I.C., 79 F.3d 362, 370 (3d Cir. 1996)(emphasis added). Further:

> The ADA defines readily achievable as "easily accomplishable and able to be carried out without much difficulty or expense." 42 U.S.C. §

12181(9). The ADA uses four factors to determine if an action is readily achievable: "(A) the nature and cost of the action needed under this chapter; (B) the overall financial resources of the facility or facilities involved in the action; the number of persons employed at such facility; the effect on expenses and resources, or the impact otherwise of such action upon the operation of the facility; (C) the overall financial resources of the covered entity; the overall size of the business of a covered entity with respect to the number of its employees; the number, type, and location of its facilities; and (D) the type of operation or operations of the covered entity, including the composition, structure, and functions of the workforce of such entity; the geographic separateness, administrative or fiscal relationship of the facility or facilities in question to the covered entity." Id.

Access 4 All, Inc. v. ANI Associates, Inc., CIV. 04-6297RBK, 2007 WL 2793373 (D.N.J. Sept. 25, 2007).

"Whether a specific change is readily achievable 'is a fact intensive inquiry.'

Access Now v. South Florida Stadium Corp., 161 F.Supp.2d 1357, 1371(S.D.Fla.2001)." Hubbard v. Rite Aid Corp., 433 F. Supp. 2d 1150, 1168 (S.D. Cal. 2006); See Hamblen v. Diamante Crossroads Plaza, LLC, CV 08-0561-PHX-JAT, 2009 WL 825809 (D. Ariz. Mar. 30, 2009). As a fact-intensive inquiry, the question of whether a particular modification is readily achievable is not subject to summary judgment resolution on a disputed factual record.

In this case, the parties' cross motions for summary judgment raise disputed factual questions relating to the cost, necessity, and feasibility of the remaining modifications proposed by the plaintiff's expert to bring the mall into full ADA compliance. While each party assails the quality of the opposing party's proof on

these issues, we find that the parties' contentions in this regard do not eliminate material, disputed issues of fact. Rather, these contentions simply define the contours of a factual dispute, in a field that is widely recognized as a fact-intensive inquiry. Hubbard v. Rite Aid Corp., 433 F. Supp. 2d 1150, 1168 (S.D. Cal. 2006). Therefore, these fact-intensive disputes simply are not amenable to summary judgment resolution.

### E. Canadian Pacific's Tenants Are Not Necessary Parties in this Litigation at Present

Finally, in its summary judgment motion, Canadian Pacific argues that McConnell has failed to join necessary parties in this action, in that McConnell has sued Canadian Pacific, as lessor of this property, but has not joined the various tenants as defendants, entities who under the terms of their leases control aspects of the design and layout of their respective stores.

Compulsory joinder of parties is governed by Rule 19(a) of the Federal Rules of Civil Procedure, which provides in part that: "A person who is subject to service of process and whose joinder will not deprive the court of subject-matter jurisdiction must be joined as a party if: (A) in that person's absence, the court cannot accord complete relief among existing parties. . . ." Huber v. Taylor, 532 F.3d 237, 248 n. 8 (3d Cir. 2008)(quoting Rule 19(a)). "Under Rule 19(a), we ask first whether complete relief can be accorded to the parties to the action in the absence of the

unjoined party. Fed.R.Civ.P. 19(a)(1). A Rule 19(a)(1) inquiry is limited to whether the district court can grant complete relief to the persons already parties to the action. The effect a decision may have on the absent party is not material. Field, 626 F.2d at 301 (quoting 3A James W. Moore et al., Moore's Federal Practice ¶ 19.07–1[2], at 19–128 (2d ed. 1979))." Janney Montgomery Scott, Inc. v. Shepard Niles, Inc., 11 F.3d 399, 405 (3d Cir. 1993). Further, "to the extent that the court premises its decision on a Rule 19(a) determination that the absent party's joinder was 'necessary' this conclusion of law is subject to plenary review. Janney Montgomery Scott, Inc. v. Shepard Niles, Inc., 11 F.3d 399, 404 (3d Cir.1993)." McWhirter v. Selembo, 4:12-CV-704, 2012 WL 6642730 (M.D. Pa. Nov. 26, 2012) report and recommendation adopted, 4:12-CV-704, 2012 WL 6642652 (M.D. Pa. Dec. 20, 2012).

As we have noted in the past lessors and lessees may both have an interest in the outcome of ADA litigation brought against the owners and operators of commercial retail establishments, since "[l]iability under the ADA extends to 'any person who owns, leases (or leases to), or operates a place of public accommodation.' 42 U.S.C. § 12182(a). This broad definition includes both landlords and commercial tenants, and could embrace both the defendant in this case which owns the mall, and the 15 retail outlets housed at the facility owned by the defendant. See generally First

Bank National Ass'n v. FDIC, 79 F.3d 362 (3d Cir.1996) (discussing implications of ADA liability for landlords and tenants)." McConnell v. Canadian Pac. Realty Co., 280 F.R.D. 188, 196 (M.D. Pa. 2011). Indeed, at an earlier stage of this litigation, when the plaintiff was seeking discovery relating to barriers to access in both common areas at the mall, as well as barriers to access within retail space controlled by individual tenants, we observed that: "recognizing the shared interests of commercial landlords and tenants in this situation some courts have held that these tenants should be joined as indispensable parties under Rule 19 of the Federal Rules of Civil Procedure in any ADA litigation which seeks to broadly challenge barriers to access in a multi-outlet shopping mall. See Frotton v. Barkan, 219 F.R.D. 31 (D. Mass.2003)." McConnell v. Canadian Pac. Realty Co., 280 F.R.D. 188, 196 (M.D. Pa. 2011).

At the time that we made these observations, and authorized this initial inspection of the defendant's property, as a factual matter the tenants had a far greater active stake in this litigation since more than 30 of the 45 ADA compliance issues first identified by McConnell related to tenant space rather than common areas. (Doc. 89-3.) Since that time, significant remedial measures have been undertaken at this facility. Currently, the plaintiff's most recent expert report identifies only five areas of alleged non-compliance with the ADA. (Doc. 103, Ex. A.) Of these five ADA

compliance issues, four relate to common areas, and only one involves tenant space at the mall. (Id.) Thus, as a factual matter, the scope of the tenants' interest in this litigation seems much diminished by these events which have occurred during the course of this litigation.

Further, as a legal matter, we are cautioned to ensure that our analysis of joinder issues in ADA litigation involving commercial lessors and lessees takes into account the specific nature of the relief provided under the ADA, which is limited to taking those steps which are "readily achievable." The inter-related issues of joinder and statutory relief under the ADA were aptly described by the court of appeals in Disabled Rights Action Comm. v. Las Vegas Events, Inc., 375 F.3d 861 (9th Cir. 2004) when it reversed a district court finding that an institutional lessor was a necessary party under Rule 19 in an ADA lawsuit brought by an advocacy group against a lessee. In terms that are equally applicable here, the appellate court held that:

> In its original complaint, [plaintiff] sought a permanent injunction enjoining [the lessee] from engaging in discrimination on the basis of disability in violation of Title III and requiring them to cease "operating" . . . unless and until they can do so in full compliance with the ADA. The complaint sought to enjoin only the private defendants' actions. In reaching its decision, the district court entirely failed to consider whether remedies not requiring [the lessor's] cooperation would provide meaningful relief. It is apparent to us that such remedies are available. First, it is important to consider that the maximum relief available with respect to the removal of architectural or communications

> barriers under Title III is limited to those steps that are "readily achievable" by the covered entity. *See* 42 U.S.C. §§ 12182(b)(2)(A)(iv) & (v), 12181(9). "The economic situation of a public accommodation [operator] is taken into account in assessing whether the removal of architectural barriers or the provision of auxiliary aids is 'readily achievable.' " Botosan, 216 F.3d at 834 n. 2 (citing 42 U.S.C. § 12181(9)). Also relevant is the "administrative or fiscal relationship of the facility or facilities in question to the covered entity." 42 U.S.C. § 12181(9)(D). Accordingly, the private defendants' Title III obligation would be determined with respect to . . . its relationship with the [lessor], among other considerations, and "complete relief" under the statute may not necessarily mean the achievement of a fully accessible [facility]. Meaningful relief could thus be granted by enjoining [the lessee] from making certain kinds of operational decisions regarding conditions over which they have control . . . . These forms of relief, which are neither hollow nor meaningless, would be available with or without [the lessor's] participation. See Ass'n to Protect Hammersley, Eld, & Totten Inlets v. Taylor Res., Inc., 299 F.3d 1007, 1014–15 (9th Cir.2002) (concluding that complete relief was possible where relief was available regardless of the absent party's participation).

Disabled Rights Action Comm. v. Las Vegas Events, Inc., 375 F.3d 861, 879-80 (9th Cir. 2004); see also Hubbard v. Rite Aid Corp., 433 F. Supp. 2d 1150, 1168 (S.D. Cal. 2006).

In our view, the teaching of Disabled Rights Action Comm. v. Las Vegas Events, Inc., supra, in this setting is clear and can be clearly stated: When presented with a property jointly controlled by lessors and lessees, an ADA plaintiff may elect to sue only some parties, and not others. That election will not necessarily render the unnamed parties as necessary or indispensable parties under Rule 19, provided the remaining parties–whether lessors or lessees–can provide some measure of

meaningful relief to the plaintiff, even if that relief does not guarantee a fully accessible facility. Yet while the plaintiff's election to sue only some parties does not compel joinder under Rule 19, it may limit the scope of the meaningful relief that can be provided under the ADA since that relief is restricted by statute to what may be "readily achievable" and the failure to join either a lessor or lessees may restrict what is "readily achievable" in a given case.

In this case, to date McConnell has elected not to name the lessees as defendants. While we find that these lessees are not necessary parties in this lawsuit at this time, since the focus of McConnell's remaining claims has shifted to common area concerns instead of the tenant space issues which initially predominated in this litigation, McConnell should be on notice that this ruling, and his election to refrain from naming any tenants as defendants, may ultimately limit the scope of any meaningful relief in this lawsuit.

## IV.   <u>RECOMMENDATION</u>

Accordingly, for the foregoing reasons, IT IS HEREBY RECOMMENDED THAT the parties' motions for summary judgment (Docs. 85 and 87.) and the defendant's motion to strike (Doc. 103.) be DENIED.

The parties are further placed on notice that pursuant to Local Rule 72.3:

Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in

28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Submitted this 11th day of September 2013.


*/s/ Martin C. Carlson*
Martin C. Carlson
United States Magistrate Judge