IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| WILL MCCONNELL, | : | Civil Action No. 4:11-CV-0972 |
| | : | |
| Plaintiff, | : | (Judge Brann) |
| | : | |
| v. | : | |
| | : | |
| CANADIAN PACIFIC HILLS | : | |
| PLAZA, *a Pennsylvania Limited* | : | (Magistrate Judge Carlson) |
| *Partnership*, | : | |
| | : | |
| Defendant. | : | |

**MEMORANDUM OPINION**

January 16, 2013

## I. BACKGROUND

Title III of the Americans With Disabilities Act was designed so that persons

with disabilities may enjoy the full panoply of goods and services that modern

American society provides.  The act was designed to prevent both intentional and

unintentional discrimination against persons with disabilities in places of public

accommodation.  However, the instant litigation has journeyed far past the noble

intent of this act, seemingly down the river Styx to the murky underworld of

endless litigation.

A reference to Hades may appear to be perfervid to a reader unfamiliar with

the instant action, however, even a cursory reading of the parties' filings in this

1

case illustrates the tempestuous heat emanating from the contentiousness of this litigation. The journey in this memorandum opinion begins with the end. Presently pending before the Court is a Report and Recommendation issued by Chief Magistrate Judge Martin C. Carlson recommending denial of the parties' cross motions for summary judgment and denial of defendant's motion to strike. Report & Recommendation, September 11, 2013, ECF No. 108.

The report and recommendation will be adopted in part, and rejected in part, for reasons explained below. Defendant's motion to strike will be granted. Def.'s M. to Strike, March 7, 2013, ECF No. 103. Defendant's motion for summary judgment will be granted in part and denied in part. Def.'s Mot. Summ. J., February 4, 2013, ECF No. 85. Plaintiff's motion for summary judgment will be denied. Pl.'s Mot. Summ. J., February 4, 2013, ECF No. 87. The case will now be set for a bench trial.

## II. DISCUSSION

### A. Procedural History

It may appear from the following paragraphs that the undersigned has succumbed to the song of the Sirens and has crashed the ship into the rocks in this memorandum opinion by delineating below seemingly mundane case details. However, the alleged dilatoriness of the filing of a final expert report is the subject matter of a pending motion to strike; accordingly, it is also important to course the waters of the various due dates assigned in this case.

The instant action was commenced on May 20, 2011. Pl.'s Compl., ECF No. 1. Plaintiff, Will McConnell, is a wheelchair-bound individual, who operates as a 'tester'[1] under Title III of the Americans with Disabilities Act (colloquially referred to as the "public accommodations" section of the Act). On a date not disclosed in the first complaint, McConnell traveled from his home in Clearfield County, Pennsylvania to the Canadian Hills Plaza, a shopping center divided into two plazas, Hills Plaza and Hills Plaza South, located along Atherton Street, State

---

[1]An ADA 'tester' is an individual with a disability who repeatedly visits places of public accommodation with the dual motivation of verifying ADA compliance along with availing himself or herself with the goods and/or services available. McConnell has self-identified as a tester and has filed five such cases in the Middle District of Pennsylvania, represented by the same counsel in all five cases. Title III of the ADA is a fee-shifting statute, which explains how testers are able to bear the costs associated with repeated litigation.

College, Centre County, Pennsylvania. Plaintiff's first complaint identified two areas of allegedly discriminatory access in paragraph 10; to wit: parking accessability and the path of travel to entrance access. Paragraph 11 specifically contemplated additional identification of alleged discrimination after inspection by an expert.

The Honorable John E. Jones III, to whom this matter was previously assigned, entered an order, *inter alia*, setting the following due dates: dispositive motions were due May 1, 2012; discovery was to be completed March 30, 2012; Plaintiff's expert report was due December 15, 2011; Defendant's expert report was due February 1, 2012; and supplemental expert reports were due March 1, 2012. Order, September 30, 2011, ECF No. 16.

From the outset, this matter was acrimonious. Plaintiff served Defendant with an overly broad demand for inspection pursuant to Federal Rule of Civil Procedure 34. Judge Jones suggested the parties attempt to work out their dispute without court intervention, but they were unable to do so. Defendant filed a Motion for Protective Order, which was referred to Chief Magistrate Judge Carlson for resolution. After hearing oral argument and receiving full briefing, Chief Magistrate Judge Carlson issued a Memorandum Opinion and Order on November 14, 2011, narrowing the scope the inspection request. ECF No. 29. After Plaintiff

stated that the inspection should take less than two hours, Chief Magistrate Judge

Carlson limited the inspection to two-and-one-half hours, after regular business

hours, to "those ADA considerations which[,] the Plaintiff, a mobility challenged

individual, has standing to pursue; that is, mobility barriers to access at this

facility." *Id.* at 11.  Despite Defendant's objections, Chief Magistrate Judge

Carlson permitted inspection of the facility that was much broader than the two

access barriers Plaintiff actually experienced on his visit to defendant's plazas,

namely, parking and the path of travel to entrance access.  Chief Magistrate Judge

Carlson allowed for the inspection of all possible mobility barriers at the site.

Prior to filing the above mentioned motion for protective order, Defendant

had also filed a motion to dismiss.  This motion was decided by Judge Jones after

the motion for protective order was decided by Chief Magistrate Judge Carlson.

On December 9, 2011, Judge Jones denied the motion to dismiss and  ordered

Plaintiff to file an amended complaint.  ECF No. 34.   Plaintiff filed his amended

complaint on December 19, 2011.  ECF No. 35.

In February 2012 Plaintiff filed a motion to extend the scheduling deadlines,

which was opposed by Defendant because it claimed that the Plaintiff was

attempting to take a second bite of the apple, so to speak, with regard to his

inspection.  ECF Nos. 37 and 38.  Plaintiff's expert first inspected Defendant's

property on November 15, 2011. ECF No. 38 at 2. The expert report was provided to Defendant on December 1, 2011. *Id.* This first inspection was of the exterior of the property only, an interior inspection was not completed. Defendant provided to Plaintiff its own expert report on February 1, 2012. Defendant opposed the extension of deadlines because Plaintiff was now attempting to obtain an interior inspection of the tenant properties. This motion was referred to Chief Magistrate Judge Carlson, who again allowed a much broader inspection than the two access barriers Plaintiff actually experienced on his visit to Defendant's plazas, and granted the extension, with new due dates of April 30, 2012 for discovery, May 30, 2012 for dispositive motions, Plaintiff's supplemental expert report due April 6, 2012 and Defendant's supplemental expert report due May 1, 2012. ECF No. 41.

Not surprisingly, this Order from Chief Magistrate Judge Carlson lead to even more litigation, this time, from the tenants of the subject property. After a telephone conference, Chief Magistrate Judge Carlson entered another order on March 13, 2012, directing that the interior inspection take place after store hours. ECF No. 51.

Once again, the time for expert reports was moved for extension, this time by Defendant, with Plaintiff's supplemental expert report deadline extended to April 23, 2012 and Defendant's supplemental expert report due May 11, 2012.

ECF No. 53.

Plaintiff next moved to compel discovery and for an extension of time to file a rebuttal expert report. After a telephone conference call on the issues, and after expressing his frustration with the parties failure to collaborate, on May 9, 2012, Judge Jones ordered Defendant to file the requested information. ECF No. 63.

Defendant next moved for an extension of dispositive motion deadlines to make the requested repairs of areas that were ADA noncompliant and, additionally, filed its first motion for summary judgment. Plaintiff opposed this extension as well, and, additionally, filed his first motion for summary judgment on May 30, 2012. Judge Jones, in the hopes that Defendant was correct that its remediation efforts could resolve many, if not all, of the issues in this litigation, granted Defendant the time needed to cure the physical deficiencies at the subject properties. ECF No. 69.

Like hissing snakes in Medusa's hair, the parties could not agree on whether or not Plaintiff's expert should once again physically enter both the exterior and interior of tenant spaces to inspect the property. This dispute was yet again referred to Chief Magistrate Judge Carlson for resolution. Chief Magistrate Judge Carlson extended discovery to July 27, 2012 "for the limited purpose of permitting Defendant to finalize any improvements or efforts to remediate its property that

have been undertaken in response to this litigation, and to permit Plaintiff's expert an opportunity to conduct a final inspection of the property and the individual tenants' stores to make a determination about whether the property is ADA-complaint." ECF. No. 78.

Because Defendant had successfully made many of the requested repairs that, according to Judge Jones, "necessarily moots large portions of the motions for summary judgment as filed," these motions were dismissed for the parties to submit revised motions for summary judgment due February 4, 2013. This matter was then reassigned to the undersigned on January 17, 2013.

The parties promptly filed cross-motions for summary judgment. ECF Nos. 85 and 87. Plaintiff's motion for summary judgment caused more ire to defendant, and as a result, Defendant filed a motion to strike. ECF No. 103. The undersigned referred the three pending motions to Chief Magistrate Judge Carlson, now thoroughly familiar with the case, for report and recommendation. Chief Magistrate Judge Carlson recommended denying all three motions and further recommended setting the case for a bench trial. Neither party objected to the report and recommendation.

The report and recommendation will be adopted in part, and rejected in part, for reasons delineated below. Defendant's motion to strike will be granted. Def.'s

M. to Strike, March 7, 2013, ECF No. 103.  Defendant's motion for summary judgment will be granted in part and denied in part.  Def.'s Mot. Summ. J., February 4, 2013, ECF No. 85.  Plaintiff's motion for summary judgment will be denied.  Pl.'s Mot. Summ. J., February 4, 2013, ECF No. 87.  The case will be set for a bench trial.

**B.  Motion to Strike**

Before turning to the cross-motions for summary judgment, the motion to strike must be dealt with as an initial matter, as it seeks to strike exhibits and unsigned affidavits attached to Plaintiff's briefs against Defendant's summary judgment motion.  On March 7, 2013, Defendant filed the motion to strike. ECF No. 103.  Defendant seeks to strike both an expert report provided by Plaintiff's expert that was provided to Defendant for the first time only accompanying a summary judgment brief, well after the afore-mentioned, frequently extended discovery deadline, as an exhibit to Plaintiff's opposition brief to Defendant's motion for summary judgment.  Defendant also seeks to strike several unsigned affidavits provided by Plaintiff.

The expert report at issue is Plaintiff's fourth expert report.  This expert report stemmed from Chief Magistrate Judge Carlson's order that extended discovery "for the limited purpose of permitting Defendant to finalize any

improvements or efforts to remediate its property that have been undertaken in response to this litigation, and to permit Plaintiff's expert an opportunity to conduct a final inspection of the property and the individual tenants' stores to make a determination about whether the property is ADA-complaint." ECF No. 78. The previously undisclosed expert report filed February 27, 2013 also seems to have been filed in response to Judge Jones' noting on January 9, 2013, that "the completion of the Weis Markets' renovations necessarily moots large portions of the motions for summary judgment as filed..." ECF No. 84.

Plaintiff argues that he simply forgot to present the final re-inspection report to opposing counsel, and that the error is harmless because the information in the final report was merely repetitive of previous reports.

Federal Rule of Civil Procedure 26 requires disclosure of expert reports. These disclosures may be supplemented within the time period ordered by the Court. Fed. R. Civ. P. 26(e)(1)(B). The Federal Rules also allow the Court to sanction a party by striking "evidence on a motion...unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1)(C). Plaintiff here claims that the failure to disclose the report to defendant was harmless. Before striking the report, the undersigned is required to consider four factors. "(1) the prejudice or surprise of the party against whom the excluded evidence would have

been admitted; (2) the ability of the party to cure that prejudice; (3) the extent to which allowing the evidence would disrupt the orderly and efficient trial of the case or other cases in the court: and (4) bad faith or wilfulness in failing to comply with a court order or discovery obligation." *Nicholas v. Pennsylvania State University,* 227 F.3d 133, 148 (3d Cir. 2000).

The alleged error or oversight on the part of plaintiff, in different circumstances, may be harmless. But given the tortured history of the instant matter and the lack of collegiality exhibited by the parties in this matter, the Court draws the conclusion that the error is not harmless. This determination is made, mainly, based on the third factor the Court must examine - the orderly and efficient trial of this, and other cases in this Court. The undersigned and his colleagues set deadlines in fairness to all parties. Both parties in the instant litigation were given sufficient leeway with extensions of time in this case. Complying with the ADA should not turn into the twelve labors of Hercules. As detailed above, Chief Magistrate Judge Carlson was more generous than the undersigned would likely have been in permitting endless inspections and extensions of time for the parties to conduct discovery and disclose expert reports.

Be that as it may, all five remaining disputes involve alleged barriers to access that were previously noted in Plaintiff's prior expert reports, including the

report Defendant attached to its memorandum of law in support of its motion for summary judgment. ECF No. 86-4. Therefore, the Court also concludes that it is disingenuous for Defendant to claim it was unaware of these requested repairs. Although the undersigned will grant the motion to strike both as a matter of principle and to underscore the respect demanded by the deadlines imposed by this Court, the matter is entirely academic, as Defendant had already been requested to make all remaining requested repairs.

Finally, Plaintiff did not set forth a good reason for providing either a late re-inspection report or unsigned affidavits. Plaintiff's only rationale was forgetfulness. The effective administration of the American legal system requires participants who comply with Court orders and discovery obligations. To claim forgetfulness, in this case, is unpersuasive.[2]

Defendant's motion to strike will be granted.

## C. Cross-Motions for Summary Judgment

1.  Standard of Review

Summary judgment is appropriate if the record establishes "that there is no

---

[2]In addition to the motion to strike, Defendant pointed out that Plaintiff submitted a 25 page brief, which is in excess of the Court's 15 page limit, without having first filed a motion to exceed the page limitation. ECF No. 88. This further illustrates Plaintiff's flagrant disregard for Court Orders and rules.

genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Initially, the moving party bears the burden of demonstrating the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). The movant meets this burden by pointing to an absence of evidence supporting an essential element as to which the non-moving party will bear the burden of proof at trial. *Id.* at 325. Once the moving party meets its burden, the burden then shifts to the non-moving party to show that there is a genuine issue for trial. Fed. R. Civ. P. 56(e). An issue is "genuine" only if there is a sufficient evidentiary basis for a reasonable jury to find for the non-moving party, and a factual dispute is "material" only if it might affect the outcome of the action under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).

In opposing summary judgment, the non-moving party "may not rely merely on allegations or denials in its own pleading; rather its response must … set out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e)(2). The non-moving party "cannot rely on unsupported allegations, but must go beyond pleadings and provide some evidence that would show that there exists a genuine issue for trial." *Jones v. United Parcel Service*, 214 F.3d 402, 407 (3d Cir. 2000).

Arguments made in briefs "are not evidence and cannot by themselves create a factual dispute sufficient to defeat a summary judgment motion." *Jersey Cent. Power & Light Co. v. Twp. of Lacey*, 772 F.2d 1103, 1109-10 (3d Cir. 1985). However, the facts and all reasonable inferences therefrom must be viewed in the light most favorable to the non-moving party. *P.N. v. Clementon Bd. of Educ.*, 442 F.3d 848, 852 (3d Cir. 2006).

Summary judgment should not be granted when there is a disagreement about the facts or the proper inferences that a factfinder could draw from them. *Peterson v. Lehigh Valley Dist. Council*, 676 F.2d 81, 84 (3d Cir. 1982). Still, "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported  motion for summary judgment; there must be a genuine issue of material fact to preclude summary judgment." *Anderson*, 477 U.S. at 247-48.

The concurrent resolution of cross-motions for summary judgment, as are presented here, "can present a formidable task."  *Interbusiness Bank, N.A. v. First Nat'l Bank of Mifflintown*, 318 F. Supp. 2d 230, 235 (M.D. Pa. 2004) (Conner, J.) (citing 10A Charles Alan Wright et al., Federal Practice and Procedure § 2720 (3d ed. 1998)). On cross-motions for summary judgment, the standard of review does not change. Each moving party must independently show that there is no genuine

issue as to any material fact and that it is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56; *Rains v. Cascade Indus., Inc.*, 402 F.2d 241, 245 (3d Cir. 1968). However, the mandate of Rule 56 that the court view all facts in the light most favorable to the non-moving party may be difficult to apply where all parties are both moving and non-moving parties. "Inferences to which a party is entitled with respect to the opponent's motion may not be granted with respect to its own." *Interbusiness Bank, N.A.*, 318 F. Supp. 2d at 236 (citing *United States v. Hall*, 730 F. Supp. 646, 648 (M.D. Pa. 1990) (Nealon, J.). Such circumstances may require separate opinions on the respective motions. *See Rains*, 402 F.2d at 245; and *Hall*, 730 F. Supp. at 648.

In this case, however, whether the facts are viewed in the light most favorable to the Plaintiff or the Defendant, the same essential narrative unfolds. Consequently, the present cross-motions for summary judgment will therefore both be decided in one Memorandum and one Order. *See Interbusiness Bank*, 318 F. Supp. 2d at 236 (relying on the mandate of Fed. R. Civ. P. 1 that the Federal Rules of Civil Procedure "shall be construed and administered to secure the just, speedy, and inexpensive determination of every action" in concurrently deciding cross-motions for summary judgment in a single opinion).

2. Alleged Barriers to Access Remaining

Of the forty-five alleged barriers to access originally requested to be remedied by Plaintiff, Defendant voluntarily remedied the bulk of the requested repairs; only five remain unremediated. The requested repairs that remain outstanding[3] are as follows 1) a sloped sidewalk in front of Wine and Spirits, GNC, H&R Block and Dragon Land Grocery (hereinafter the "GNC sidewalk"); 2) a non-compliant slope of a ramp near the entrance of Weis Markets; 3) a sign that is mounted at a non-compliant height at the NW corner near Ollies; 4) the non-compliant slope of a parking space near Kish Bank and 5) location of a toilet paper roll in a woman's bathroom. These alleged barriers to access will be addressed in the sections 4 and 7 below.

## 3. Non-Permanent Barriers to Access

In addition to the five remaining requested repairs, Plaintiff is concerned that there are non-permanent barriers that cannot ever be mooted because they can be

---

[3]It is according to Plaintiff these repairs are outstanding. Defendant focused its arguments only on the first listed requested repair, namely, plaintiff's standing and ready achievability of the installation of the handrail on the sloped GNC sidewalk. Defendant did not address the other four remaining requested repairs, to wit: the slopes near Kish Bank and Weis Markets nor the sign near Ollies nor the toilet paper roll. However, as discussed above, Defendant was aware of and requested to make these four repairs prior to Plaintiff's final, now struck, expert report. See Def. Br. ECF No. 86-4 at paragraphs C., G., and I.

moved, such as moveable trash cans obstructing space that is required to be clear in restrooms. Plaintiff asserts that although Defendant has remedied the non-permanent barriers, these obstructions cannot be found to be moot because the remedy is only temporary. While this may be true in other cases, Plaintiff here has set forth mere conjecture to suggest that Defendant will continue violate the ADA with the non-permanent barriers of access. A voluntary cessation is relevant if "there is no reasonable expectation that the wrong will be repeated. Otherwise, [the] defendant is free to return to his old ways..." *DeFunis v. Odegaard*, 416 U.S. 312, 94 S. Ct. 1704, 40 L. Ed. 2d 164 (1974).

However, unlike the plaintiff in *Chapman v. Pier 1 Imps.*, discussed *infra*, Plaintiff here has not set forth any evidence to indicate to the undersigned that Defendant will not maintain the non-permanent barriers in a condition that allows plaintiff barrier free access to the facility. 870 F. Supp. 2d (E.D. Ca. 2012) (Karlton, J). In that case, the Plaintiff, Chapman, visited the offending Pier 1 store eleven times and provided documentation to the Court to show that the non-permanent barrier was consistently in violation of the ADA. Plaintiff here only argues to the Court that Defendant could re-offend. The Court has no substantive basis upon which to make a finding that Defendant is currently, or will in the future, re-offend with the non-permanent barriers to access. Accordingly, the

Defendant's motion for summary judgment will be granted as to the mootness of the non-permanent barriers to access.

4.  Standing as to the Women's Restroom

Mr. McConnell does not have standing to assert a claim as to the location of a toilet paper roll in the women's restroom.   To have standing, a plaintiff

> must have suffered an 'injury in fact' an invasion of a legally protected interest which is (a) concrete and particularized, and (b) 'actual or imminent, not "conjectural" or "hypothetical."' Second, there must be a causal connection between the injury and the conduct complained of – the injury has to be 'fairly...trace[able] to the challenged action of the defendant, and not ...th[e] result [of] the independent action of some third party not before the court.' Third, it must be 'likely,' as opposed to merely 'speculative,' that the injury will be 'redressed by a favorable decision.'

*Ariz. Christian Sch. Tuition Org. v. Winn*, __ U.S. __,  131 S. Ct. 1436, 1442, 179 L. Ed. 2d 523, (2011), *citing Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560-561, 112 S. Ct. 2130, 119 L. Ed. 2d 351 (internal citations and footnote omitted).  There is no reason for this male Plaintiff to use a woman's restroom, thus, there is no causal connection between Plaintiff's ability to use Defendant's shopping centers and the condition of a restroom restricted to females.

Accordingly, summary judgment will be granted to Defendant insofar as Plaintiff's claim rests on the condition of the womens' restroom.

5.  Requests for Admission

Plaintiff argues that Defendant has conceded liability as to the entire action,

based on its responses to Plaintiff's requests for admission, specifically in its responses to questions 2, 3 and 5. ECF No. 88-3.  Question 3 pertains to ownership of the shopping center, which Defendant admitted.  Questions 2 and 5 ask Defendant to admit or deny that the removal of "any" barriers of access would not create an undue hardship to defendant and would be readily achievable.  Defendant responded that it did not have enough information to respond to these questions at that time.

Plaintiff is correct that Federal Rule of Civil Procedure 36 was designed to expedite litigation and trial by establishing certain material facts as true. Plaintiff is also correct that requests that are neither admitted or denied are deemed admitted for purposes of summary judgment.  *See Community State Bank v. Midwest Steel Erection, Inc.*, 24 Fed. R. Serv. 2d 428 (S.D. S.D.) (1977) (Nichol, J.).  However, the admission sought is overly broad in scope.  Admissions under Rule 36 are not intended to be so broad that they cover all the issues in a complex case.  *See Lantz v. New York C. R. Co.*, 37 F.R.D. 69 (N.D. Ohio) (1963) (Kalbfleisch, J.).  Plaintiff's request to admit did not specify which of the forty-five identified alleged barriers of access the questions were referring to.  As written, the questions would be impossible for defendant to respond to without conceding liability as to the entire case.  This Court declines to accept Plaintiff's position and hold that an

overly broad request to admit results in Defendant conceding all liability in this case.

6.  Joinder and Standing

Defendant argues that the tenants of the subject properties need to be joined as necessary parties, and it also argues that Plaintiff does not have standing to bring this action.  Chief Magistrate Judge Carlson was correct in how he addressed these two issues in his report and recommendation.  To conserve judicial resources, these portions will be adopted and incorporated by reference into this Memorandum Opinion.  The undersigned has drawn the same conclusion as Chief Magistrate Judge Carlson: Plaintiff has standing to bring this action and the tenants are not necessary parties to the lawsuit. ECF No. 108 at 13-21 and 24-29.

7.  Trial on the Remaining Alleged Barriers to Access

The four remaining barriers to access, three of which are non-compliant concrete slopes and the other is a non-compliant sign height, will need to be addressed at a bench trial.  The GNC sidewalk slope is a source of contention between the parties.  Plaintiff desires either a handrail or for the slope to be regraded.  Defendant asserts that Plaintiff, a quadripelegic, does not have standing to request a handrail.  In the alternative, Defendant asserts that both the handrail and regrading the slope are not readily achievable, for a multitude of reasons.

Because there are disputed facts as to the GNC sidewalk, these issues cannot be disposed of via summary judgment motions, and a trial must be conducted.

Additionally, because Defendant focused the remainder of its arguments on its motion to strike and made no argument whatsoever as to the achievability of the slope of the ramp and Weis Markets, the slope of the parking space by Kish Bank and the height of the sign by Ollies, the undersigned may only make a determination whether or not to order injunctive relief to remedy the alleged barriers of access after testimony at trial.

## III. CONCLUSION

The course has been charted and this pre-trial odyssey ends here. Defendant's motion for to strike will be granted; defendant' s motion for summary judgment will be granted in part and denied in part; and plaintiff's motion for summary judgment will be denied.

This case will be set for trial as to the remaining four alleged barriers to access: 1) a sloped sidewalk in front of Wine and Spirits, GNC, H&R Block and Dragon Land Grocery; 2) a non-compliant slope of a ramp near the entrance of Weis Markets; 3) a sign that is mounted at a non-compliant height at the NW corner near Ollies; and 4) the non-compliant slope of a parking space near Kish Bank.

An Order in accordance with the instant memorandum opinion will issue this

date.

BY THE COURT:


＿＿s/ Matthew W. Brann＿＿＿＿＿
Matthew W. Brann
United States District Judge